UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SAMUEL HUTCHINSON and <br> LAURNA HUTCHINSON, <br><br> Plaintiffs, <br><br> v. <br><br> PACIFIC INDEMNITY COMPANY, <br><br> Defendant. | No. 4:14-CV-753 RLW |

## MEMORANDUM AND ORDER

This matter is before the court on Plaintiffs Samuel Hutchinson and Laurna Hutchinson's Motion for Summary Judgment on Count I of Plaintiffs' Complaint (ECF No. 18) and Defendant Pacific Indemnity Company's Motion for Summary Judgment (ECF No. 22). These matters are fully briefed and ready for disposition.

## BACKGROUND

On or around May 28, 2011, Plaintiffs Samuel Hutchinson and Laurna Hutchinson's property, located at 901 Shelly Avenue, Alton, Illinois (the "Property"), experienced a mine subsidence event, which damaged the Property. (Defendant Pacific Indemnity Company's Memorandum in Support of its Motion for Summary Judgment ("DSUMF"), ECF No. 23, ¶1). The damage to the Property resulted in a total loss. (Plaintiffs Samuel Hutchinson and Laura Hutchinson's Statement of Uncontroverted Material Facts ("PSUMF"), ECF No. 19, ¶¶19-21). Prior to the mine subsidence event, Pacific Indemnity Company ("Pacific") issued to Plaintiffs a real property insurance policy (the "Policy") that was in effect during the mine subsidence event. (DSUMF, ¶2). After the mine subsidence event, Plaintiffs made a claim for loss. (DSUMF, ¶3).

Pacific investigated Plaintiffs' claim and consequently paid Plaintiffs $750,000.00, which Pacific determined was the per occurrence limit under the Policy for mine subsidence coverage. (DSUMF, ¶4).

Under its own terms, "Policy" is defined to include the Coverage Summary, as well as any subsequent Coverage Updates. (DSUMF, ¶¶6-7). Pacific also provided coverage updates to the insured. The coverage updates contain the effective dates of coverage, the policy number, and the names of the injured. (DSUMF, ¶9). Pacific claims that the coverage updates communicated to Plaintiffs regarding their limit of coverage for mine subsidence loss. (DSUMF, ¶10). Pacific provided an update to Plaintiffs with the following language regarding mine subsistence coverage:

> For House and City Home with Mine Subsidence Coverage—entire state
>
> Today, we provide mine subsidence coverage for houses and city homes in the stage of Illinois. As mandated by the Illinois Mine Subsidence Insurance Fund, we are required to provide mine subsidence coverage for your house that is equal to your building amount, up to a maximum of $750,000.
>
> As [of] today, if your house is located in a required county and you choose to waive mine subsidence coverage an Illinois Mine Subsidence Coverage Waiver form will be mailed to you. This form must be completed, signed and returned back to Chubb within 30 days following the waiver of this coverage. Otherwise, we will add mine subsidence coverage onto your policy equal to your house building amount, up to a maximum of $750,000.

(DSUMF, ¶11).

Pacific also provided an update to Plaintiffs regarding mine subsistence coverage with the following language:

> We are pleased to enclose the renewal of your Illinois Masterpiece policy, which contains coverage enhancements, reinforcements of intent, and some narrowing of coverage. . . .

\*\*\*

**Additional Changes to Deluxe House and City Home House**

\*\*\*

**Mine Subsidence Coverage**
We revised Mine Subsidence Coverage for houses to reinforce that we cover physical loss to a house or other permanent structure caused by mine subsidence up to a maximum amount shown for Mine Subsidence Coverage on the Coverage Summary for each occurrence. For physical loss only to other permanent structures at the time of loss or the amount of Mine Subsidence Coverage, whichever is less.

We reinforced that the Earth Movement Exclusion does not apply to mine subsidence losses…

\*\*\*

(DSUMF, ¶12).

The Policy also incorporates a coverage summary. The coverage summary identifies the limits for Deluxe Home Coverage as $3,236,000 dwelling, $1,618,000 contents, and contains Additional Coverages or conditions, which state, in relevant part:

**COVERAGE SUMMARY RENEWAL**

\*\*\*

This Coverage Summary is part of your policy. PLEASE READ YOUR POLICY CAREFULLY, INCLUDING THIS COVERAGE SUMMARY, FOR A COMPLETE DESCRIPTION OF YOUR COVERAGES.

**HOMES AND CONTENTS**
Your policy provides coverage against physical loss if your home or its contents are damaged, destroyed, or lost. The kinds of losses that are covered, and any special limits that apply, are explained in detail in the policy.

\*\*\*

**Additional coverages or conditions**

\*\*\*

**Mine subsidence coverage**
We cover physical loss caused by mine subsidence to your house and other permanent structures at
901 SHELLY, ALTON, IL

Up to a maximum of $750,000 for each mine subsidence occurrence. However, if the covered loss is only to other permanent structures, the maximum amount we will pay is the amount of the coverage for mine subsidence, whichever is less. These payments do not increase the amount of coverage for your house or other permanent structures.

"Mine subsidence" means lateral or vertical ground movement caused by a failure initiated at the mine level of man-made underground mines, including, but not limited to coal mines, clay mines, limestone mines, and fluorspar mines that directly damage your house and other permanent structure. "Mine subsidence" does not include lateral or vertical ground movement caused by earthquake, landslide, volcanic eruption, soil conditions, soil erosion, soil freezing and thawing, improperly compacted soil, construction defects, roots of trees and shrubs, or collapse of storm and sewer drains and rapid transit tunnels.

The exclusion of loss caused by earth movement in this policy does not apply to mine subsidence.

The base deductible applies to each mine subsidence occurrence. The base deductible will not be waived for covered losses of more than $50,000 arising out of a mine subsidence occurrence. No special deductibles will apply to a covered loss arising out of a mine subsidence occurrence.

\*\*\*

(DSUMF, ¶13).

Pacific provided Plaintiffs with the following Coverage Summary, which has a page titled "Introduction," which states in relevant part:

**INTRODUCTION**

\*\*\*

This is your Chubb Masterpiece Policy. Together with your Coverage Summary, it explains your coverages and other conditions of your insurance in detail.

\*\*\*

**AGREEMENT**
We agree to provide the insurance described in this policy in return for your premium and compliance with the policy conditions.

**DEFINITIONS**
In this policy, we use words in their plain English meaning. Words with special meanings are defined in the part of the policy where they are used. The few defined terms used throughout this policy are defined here:

***

**Policy** means your entire Masterpiece Policy, including the Coverage Summary and any Mortgagee's Coverage Summary.
Coverage Summary means the most recent Coverage Summary we issued to you, including any subsequent Coverage Updates.
**Occurrence** means a loss or accident to which this insurance applies occurring within the policy period. Continuous or repeated exposure to substantially the same general conditions unless excluded is considered to be one occurrence.

***

(DSUMF, ¶14).

After the "Introduction," the Policy contains the description of the "Deluxe House Coverage," which provides in relevant part:

**DELUXE HOUSE COVERAGE**

***

This part of your Masterpiece Policy provides you with coverages against all risk of physical loss to your house unless stated otherwise or an exclusion applies. "House" means the main one-family or two-family dwelling at each Illinois location with Deluxe House Coverage shown in the Coverage Summary.

***

**Deluxe House Coverage**
In Deluxe House Coverage, a "covered loss" includes all risk of physical loss to your house or other property covered under this part of your Masterpiece Policy, unless stated otherwise or an exclusion applies. Exclusions to this coverage are descried in Exclusions.

**Extra Coverages**
In addition to covering the physical loss to your house, we also provide other related coverages. These coverages are in addition to the amount of coverage for your house unless stated otherwise or an exclusion applies.

**Other permanent structures**
We cover other permanent structures on the grounds of your house. For each occurrence, we will pay up to a total of 20% of the amount of house coverage for the location at which a covered loss to these structures occurs, plus any additional

amount of coverage shown in the Coverage Summary for "other permanent structures" at this location. The same payment basis applies to other permanent structures as to the house itself.

\*\*\*

**Land**
Whenever there is a covered loss to your house or other permanent structure and the related repair, replacement or rebuilding requires excavation, replacement or stabilization of land under or around your house or other permanent structure, we will also pay the greater of $5,000 or 10% of the amount of the covered loss to your house or other permanent structure for the excavation, replacement, or stabilization of the land.

**Exclusions**
These exclusions apply to your Deluxe Home Coverage, including the Extra Coverages, unless stated otherwise.

\*\*\*

**Structural movement.** We do not cover any loss caused by settling, cracking, shrinking, bulging, or expansion of bulkheads, pavements, patios, landings, steps, footings, foundations, walls, floors, roofs, or ceilings except to glass that is part of a building, storm door, or storm window. But we do insure ensuing covered loss unless another exclusion applies.
\*\*\*
**Earth movement.** We do not cover any loss caused by earth movement, including volcanic eruptions, landslides, mud flows, and the sinking, rising, or shifting of land. ...
\*\*\*

(DSUMF, ¶15).

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## DISCUSSION

In the instant action, Plaintiffs claim that losses due to mine subsidence are not limited to the per occurrence limit of $750,000. Rather, Plaintiffs claim that they are entitled to $3,236,000 under the "Deluxe House Coverage" portion of the policy. Plaintiffs maintain that Policy provides duplicate coverage under both the Deluxe House Coverage provision for physical loss to the house, and also under the mine subsidence extra coverage. (ECF No. 20 at 10). Under the duplicate coverages provision of the General Conditions, "[i]f a loss is covered under more than

one part of this policy, we will pay you under the part giving you the most coverages, but not under more than one part." (ECF No. 20 at 9 (citing Exhibit 1, Page 1-BH). Plaintiffs assert that the Court should enter Judgment in favor of Plaintiffs in the amount of $2,486,000, which is the amount coverage under the Deluxe Coverage $3,236,000.00 less the $750,000.00 already paid. (ECF No. 20 at 10).

In response, Pacific contends that Plaintiffs are not due the additional payments because (1) the earth movement exclusion excludes losses due to mine subsidence, (2) analysis of the subject matter and risks undertaken supports Pacific's position that there is no coverage for mine subsidence losses under the Deluxe House coverage, and (3) the Policy otherwise states that payments due to mine subsidence losses are limited to $750,000 per occurrence. (ECF No. 27 at 2).[1] Pacific claims that the only payments due Plaintiffs under the Policy are pursuant to the mine subsidence coverage, which Pacific has already paid. (ECF No. 27 at 2).

- **Earth Movement Exclusion**

Plaintiffs argue that their total loss to the Property is covered by the Policy, which provides coverage "against a physical loss if [Plaintiffs'] home or its contents are damaged, destroyed or lost.'" (ECF No. 20 at 6). Plaintiffs argue that the "earth movement exclusion" to coverage under the Policy does not apply because it does not apply to mine subsidence, which is a man-made event. (ECF No. 20 at 6-9). Plaintiffs maintain that Courts have held that the earth movement exclusion is limited to "naturally occurring events such as earthquakes and landslides" and, therefore, the exclusion does not apply. (ECF No. 20 at 7) (citing *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 35 (3d Cir. 1987) ("earth movement exclusions in insurance policies generally refer to and have historically related to catastrophic

---

[1] The Court focuses on the first part, which is dispositive of this case.

and extraordinary calamities such as earthquakes and landslides"); *Nautilus Ins. Co. v. Vuk Builders, Inc.*, 406 F. Supp. 2d 899, 903 (N.D. Ill. 2005) ("Although Illinois courts have not had very many opportunities to construe 'subsidence' or 'earth movement' exclusions similar to the one at issue in this case, other jurisdictions generally have found such exclusions to be ambiguous and construed them narrowly in favor of the insured."); *Mattis v. State Farm Fire & Cas. Co.*, 454 N.E.2d 1156, 1160 (1983) ("It is our view that the exclusions contained in this clause were not intended to cover damage resulting from something other than those causes of the type expressly stated in the exclusions."); *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 673 (Nev. 2011) ("the Liberty Mutual policy is ambiguous as to what precisely earth movement is when it is not a type of widespread, calamitous event" because it includes a list of examples of mostly naturally occurring events as well as possibly human-caused events).

In response, Pacific argues that if there were no mine subsidence endorsement in the Policy then there would be no coverage for Plaintiffs' mine subsidence loss based upon the earth movement exclusion. (ECF No. 23 at 20). Pacific asks this Court to apply the "plain, ordinary, and common meaning" of the terms in the earth movement exclusion to find it to be unambiguous and that "earth movement" encompasses "ground movement." (ECF No. 27 at 4-5). Pacific acknowledges that Illinois courts have held that "earth movement" exclusions apply only to earth movement due to natural causes. *See Mattis*, 454 N.E.2d at 1160. Pacific, however, argues that *Mattis* dealt with backfill causing the plaintiff's basement walls to shift, not with mine subsidence. Because *Mattis* did not involve mine subsidence, Pacific claims that the Court has "no way of knowing how the mandatory coverages under Illinois Mine Subsidence Act would have influenced the court." (ECF No. 23 at 23).

Moreover, because Pacific claims that the earth movement exclusion is unambiguous, Pacific maintains that there is no reason for the Court to apply the doctrine of *ejusdem generis* to this case.[2] Pacific offered Plaintiffs the maximum amount of mine subsidence coverage required by the Illinois Mine Subsidence Act, $750,000. (DSUMF, ¶18). Pacific maintains that the Policy and the Illinois Legislature have given "mine subsidence" a consistent meaning:

> "Mine subsidence" means lateral or vertical ground movement caused by a failure initiated at the mine level of man-made underground mines, including, but not limited to coal mines, clay mines, limestone mines, and fluorspar mines that directly damage your house and other permanent structure. "Mine subsidence" does not include lateral or vertical ground movement caused by earthquake, landslide, volcanic eruption, soil conditions, soil erosion, soil freezing and thawing, improperly compacted soil, construction defects, roots of trees and shrubs, or collapse of storm and sewer drains and rapid transit tunnels.

(DSUMF, ¶13; 215 ILCS 5/802.1). Pacific points out that a portion of these definitions includes "lateral or vertical *ground movement*." (ECF No. 27 at 4 (citing DSUMF, ¶13; 215 ILCS 5/802.1) (emphasis in the brief)). Likewise, the earth movement exclusion states in relevant part:

> **Earth movement**. We do not cover any loss caused by *earth movement* including volcanic eruptions, landslides, mud flows, and the sinking, rising, or shifting of land. …

(DSUMF, ¶15) (emphasis in brief). Pacific argues that the earth movement exclusion encompasses mine subsistence because "earth movement" necessarily embraces "ground movement." (ECF No. 27 at 4). Pacific refers the Court to the dictionary definitions of ground, which is defined as the "surface of the earth," and earth, which is defined as "land as opposed to the sea, the air, etc." MERRIAM-WEBSTER ONLINE DICTIONARY, available at

---

[2] "The doctrine of *ejusdem generis* provides that when a … clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted as meaning 'other such like.'" *People v. Davis*, 199 Ill. 2d 130, 138, 766 N.E.2d 641, 645 (2002) (citations omitted).

http://www.merriam-webster.com/dictionary/ground, (last visited on August 5, 2015); MERRIAM-WEBSTER ONLINE DICTIONARY, available at http://www.merriam-webster.com/dictionary/earth (last visited on August 5, 2015). Because the plain, ordinary and common meanings of these terms are equivalent, Pacific argues that there is no basis for the Court to find any ambiguity. (ECF No. 27 at 4-5). Likewise, because there is no ambiguity, Pacific maintains that this Court should not apply the doctrine of *ejusdem generis* to find that mine subsidence is covered under the Deluxe House policy provisions. (ECF No. 27 at 5). Pacific refers the Court to the Supreme Court of Kansas' reasoning in *Stewart v. Preferred Fire Ins. Co.*, which refused to apply the doctrine of *ejusdem generis* to the earth movement exclusion:

> Before the rule of *ejusdem generis* can be applied the clause must be ambiguous. The term 'earth movement' taken in its plain, ordinary and popular sense means any movement of earth whether it be up, down or sideways. The words 'earthquake, landslide, mud flow' and the term 'earth sinking, rising or shifting' all refer to vertical or horizontal movements of earth or soil, wet and dry. We fail to see how the exclusionary clause can be considered ambiguous. The words used may not reasonably be understood to have two or more possible meanings.

*Stewart v. Preferred Fire Ins. Co.*, 206 Kan. 247, 249-50, 477 P.2d 966, 969 (1970) (internal citation omitted). Further, Pacific cites to the Northern District of Illinois, applying Illinois law, which addressed a similar policy definition of earth movement:

> According to the Definitions section, **"[e]arth movement"** is "*any* movement of the earth (other than 'sinkhole collapse'), *including but not limited to* : a. earthquake; b. landslide; c. earth sinking, rising or shifting; d. volcanic eruption, explosion or effusion."

*One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520, 2014 WL 4977331, at *7 (N.D. Ill. Oct. 6, 2014) (emphasis in original). The Northern District of Illinois determined that the earth movement exclusion was "unambiguous and, as it states, applies to 'any' earth movement, 'including but not limited to' the types of movement listed in the clause which

includes 'earth sinking, rising or shifting.'" *One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520, 2014 WL 4977331, at *18 (N.D. Ill. Oct. 6, 2014). Pacific acknowledges that its policy does not include the language "but not limited to," but Pacific argues that such language is superfluous "as in common parlance 'including' does not express a limitation." (ECF No. 27 at 9). Further, Pacific claims that even if "including" did express a limitation, "the identified causes of earth movement in Pacific's exclusion: volcanic eruptions, landslides, mud flows, and the sinking, rising, or shifting of land (apart from perhaps volcanoes) are not caused solely by nature." (ECF No. 27 at 9).

Pacific further notes that the coverage summary plainly states that mine subsidence coverage is limited to $750,000. (ECF No. 23 at 16-19). Pacific maintains that that the coverage summary makes clear that mine subsidence coverage was not supplemental to other coverages. (ECF No. 23 at 17). The Policy states: "These [mine subsidence] payments do not increase the amount of coverage for your house or other permanent structures." (ECF No. 23 at 17). Pacific maintains that, "[r]eading the policy as a whole demonstrates that Pacific has defined mine subsidence such that it can be understood by the average person, and Pacific has clearly expressed that losses caused by mine subsidence are limited to $750,000 per occurrence." (ECF No. 23 at 19).

Pacific also argues that an analysis of the subject matter and risks undertaken supports Pacific's position that coverage for Plaintiffs' loss is limited to $750,000 per mine subsidence occurrence. (ECF No. 23 at 10-12). As previously noted, Illinois law requires Pacific to offer mine subsidence coverage to houses located within the entire state of Illinois. *See* 215 ILSC8/805.1(a)-(e). *See* 215 ILCS 5/805.1(a)-(e) (Illinois law requires Pacific to offer mine subsidence coverage to houses and city homes located within the entire state of Illinois). Pacific

contends that the State of Illinois has mandated that Illinois insurers provide fixed amounts of coverage for fixed premiums. (ECF No. 23 at 10). Pacific contends that the statutory framework provides that Pacific can recover for losses from the Illinois Mine Subsidence Insurance Fund, up to the maximum amount, $750,000, which is amount that Pacific offered to Plaintiffs. (ECF No. 23 at 10). Pacific states that this demonstrates that it covered the mine subsidence risk only because it was obligated to provide coverage by the State of Illinois. (ECF No. 23 at 11). In addition, Pacific claims that this demonstrates that the State of Illinois believed that mine subsidence was not a risk traditionally covered under homeowner's insurance policies. (ECF No. 23 at 11).

First, the Court recognizes the well-established rule that any ambiguity in an insurance contract must be construed against the drafter, that is, the insurer. *Sargent Const. Co., Inc. v. State Auto. Ins. Co.*, 23 F.3d 1324, 1326 (8th Cir. 1994) ("if an insurance policy is ambiguous, the policy shall be construed against the insurer"); *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 698 (Mo. 1982) (same). In addition, "'[w]hen interpreting an insurance policy, this court is to give the policy a reasonable construction and interpret the policy so as to afford rather than defeat coverage.'" *Murray v. Am. Family Mut. Ins. Co.*, 429 F.3d 757, 764 (8th Cir. 2005) (quoting *JAM Inc. v. Nautilus Ins. Co.*, 128 S.W.3d 879, 893 (Mo. Ct. App. 2004) (internal citation omitted)). As noted by Plaintiffs, the Policy provides coverage to Plaintiffs for the physical loss of their house against "all risk of physical loss to your house unless stated otherwise or an exclusion applies." (ECF No. 31 at 13). Nevertheless, the Court finds that the unambiguous language in the Policy provides that Plaintiffs' claim for mine subsidence fits within the earth movement exclusion. The Court finds that the earth movement exclusion is not ambiguous. There is nothing in the description of the earth movement exclusion as "any loss

caused by earth movement, including volcanic eruptions, landslides, mud flows, and the sinking, rising, or shifting of land" that is ambiguous. The Court, as any reasonable reader would, interprets earth movement under its plain and ordinary dictionary meanings to include mine subsidence. Plaintiff relies heavily on *Mattis*, which found that "settlement and consolidation of the backfill material" did not fit within the policy's definition of "earth movement" or its exclusion. *Mattis,* 454 N.E.2d at 1160.[3] The Court, however, agrees with the decision in *One Place Condominium* that the *Mattis* decision does not provide firm precedent for interpreting the Policy in this case:

> The analysis [in *Mattis*] is lacking in that the court did not discuss the specific language in the exclusion and why it was ambiguous. Nor did it explain how it applied the *ejusdem generis* doctrine and what it considered to be "causes of the type expressly stated" where the exclusion included earth "sinking, rising, shifting." There was no discussion, for example, of whether earth movement must be naturally-occurring to come within the exclusion. In lieu of analysis, the court seemed merely to adopt the holding in the prior cases that it identified….

*One Place Condo., LLC*, 2014 WL 4977331, at *13. Plaintiffs argue that the earth movement exclusion in *One Place Condo., LLC* is more expansive because, as noted by the District Court, it "applies to 'any' earth movement, 'including but not limited to' the types of movement listed in the clause which includes 'earth sinking, rising or shifting.'" *One Place Condo., LLC*, 2014 WL 4977331, at *18; *see* ECF No. 31 at 8-9. The Court, however, notes that the word "including" means that the list is merely exemplary and not exhaustive. *See* Bryan Garner, *Garner's Dictionary of Legal Usage* 439 (3rd Ed. 2009) ("[I]ncluding is sometimes used for namely. But it should not be used to introduce an exhaustive list, for it implies that the list is only partial.");

---

[3] Plaintiffs also rely on *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32 (3d Cir. 1987), *Nautilus Ins. Co. v. Vuk Builders, Inc.*, 406 F. Supp. 2d 899 (N.D. Ill. 2005), *Murray v. State Farm Fire & Cas. Co.*, 203 W. Va. 477, 509 S.E.2d 1 (1998) for the proposition that earth movement exclusions are limited to naturally occurring events. *See* ECF No. 31 at 5. Those opinions do not apply Illinois law, are not from this jurisdiction, and are not binding on this Court.

*Puerto Rico Mar. Shipping Auth. v. I.C.C.*, 645 F.2d 1102, 1112 (D.C. Cir. 1981)("It is hornbook law that the use of the word 'including' indicates that the specified list of carriers that follows is illustrative, not exclusive."). Likewise, the Court does not believe that the inclusion of the word "any" adds makes the definition of "earth movement" in *One Place Condo., LLC* broader than in the instant Policy. *See* Bryan Garner, *Garner's Dictionary of Legal Usage* 66 (3rd Ed. 2009) ("Usually replacing any with the indefinite article a or an results in heightened readability with no change in meaning.").

Moreover, the Court finds no basis for applying the *ejusdem generis* doctrine in this case. The Court holds that the "earth movement" definition is not ambiguous. Rather, the Court holds that "earth movement" necessarily includes mine subsidence under the Policy. Further, even if the Court were to apply the doctrine, the definition of earth movement is not limited to "natural" occurrences as claimed by Plaintiff. Several of the items listed in the definition of earth moment can be caused by nature or man-made causes. *See One Place Condo., LLC*, 2014 WL 4977331, at *21 (concluding that earth movement includes both natural and man-made causes and necessarily follows that the losses at issue were subject to the $2.5 million Earth Movement Limit of Insurance). The Court finds that landslides and the sinking, rising, or shifting of land can have man-made causes similar to that of mine subsidence events.

Plaintiffs also make much of what the "mine subsidence" definition excludes, "landslide, volcanic eruption, soil conditions, soil erosion, soil freezing and thawing, [and] improperly compacted soil," which Plaintiffs claim is extremely similar to "volcanic eruptions, landslides, mudflows, and the sinking, rising or shifting of land" listed in the earth movement exclusion. (ECF No. 31 at 4). Plaintiffs contend that "[t]he Policy plainly includes in the earth movement exclusion what the mine subsidence definition does not include." (ECF No. 31 at 5). Thus,

Plaintiffs claim "the earth movement exclusion does not apply to mine subsidence." (ECF No. 31 at 5). The Court does not believe that the inclusion in the earth movement exclusion of what the mine subsidence definition specifically excludes is dispositive of this issue. Rather, the Court believes that the exclusion of "volcanic eruptions, landslides, mudflows, and the sinking, rising or shifting of land" reinforces that Pacific intended to create a limited exception to the earth movement exclusion by providing mine subsidence coverage only pursuant to the Illinois statutory requirement. *See also* DSUMF, ¶13 (identifying that under the mine subsidence endorsement, the exclusion of loss caused by earth movement does not apply to mine subsidence). That is, the Court believes that the earth movement exclusion specifically excluded coverage for any earth movement, including "volcanic eruptions, landslides, mudflows, and the sinking, rising or shifting of land," which the Court finds would have included mine subsidence but for the mine subsidence endorsement. Therefore, when Pacific provided mine subsidence coverage, as required by statute, Pacific apparently also sought to clarify that adding coverage for mine subsidence did not add any coverage for other ground movement that was otherwise excluded from the Policy.

The Court, therefore, is not persuaded by Plaintiffs' arguments otherwise, and grants summary judgment in favor of Pacific. But for the mine subsidence endorsement, Plaintiffs loss for mine subsidence would not be covered. The Court holds that Plaintiffs are limited to $750,000 per occurrence as outlined in the Policy. *See* DSUMF, ¶13.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs Samuel Hutchinson and Laurna Hutchinson's Motion for Summary Judgment on Count I of Plaintiffs' Complaint (ECF No. 18) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Pacific Indemnity Company's Motion for Summary Judgment (ECF No. 22) is **GRANTED**.

**IT IS FINALLLY ORDERED** that Defendant Pacific Indemnity Company's Request for Oral Argument (ECF No. 33) is **DENIED** as moot.

An appropriate Judgment is filed herewith.

Dated this 25th day of August, 2015.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**